Filed 3/3/14  Khnkoyan v. Missakian CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NAIRA KHNKOYAN et al., | B248125 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. EC057005) |
| v. | |
| CRAIG MISSAKIAN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Donna Fields Goldstein, Judge.  Affirmed.

Shaghzo & Shaghzo and Armen Shaghzo, for Plaintiffs and Appellants.

Russ, August & Kabat and Robert F. Gookin, for Defendants and Respondents.

_____

Plaintiffs, minority shareholders of two limited liability companies (LLCs), appeal from a judgment confirming an arbitration award that set the value of their shares in the companies. Plaintiffs maintain that the court erred in confirming the award because the arbitrator exceeded his powers by not valuing their shares in accordance with the provisions of the LLCs' Operating Agreements. We conclude that the arbitrator's decision that the Operating Agreements did not apply to the valuation of the plaintiffs' shares, even if erroneous, was an unreviewable error of law. Therefore we affirm the judgment. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11.)

## FACTS AND PROCEEDINGS BELOW

Plaintiffs are minority shareholders in two limited liability companies: Damon's Glendale Steak House, LLC and 317-319 Brand Blvd., LLC.

Disputes arose among the LLCs' shareholders over the operation of the companies and plaintiffs filed a suit against the majority shareholders. Pursuant to the LLCs' Operating Agreements the disputes were submitted to binding arbitration. (The relevant provisions of the LLCs' Operating Agreements are identical.)

The third cause of action in plaintiffs' initial arbitration demand sought an appraisal of their shares in the LLCs pursuant to Article 10 of the Operating Agreements which provides under specified circumstances for the sale of a member's shares to other members of the LLCs or to third party investors. Article 10.2, subdivision (b) of the Operating Agreements states that in the case of a sale under the Agreements the shares must be appraised "without regard to any discount for minority interest in the Company or nonmarketability." Plaintiffs subsequently amended their arbitration demand and notified the arbitrator and the defendants that they "hereby dismiss their Third Cause of Action for Sale of Minority Shareholders' Shares Pursuant to Article 10 without prejudice."

After plaintiffs dismissed their action for sale of their shares under the Operating Agreements they moved for dissolution of the LLCs pursuant to former

2

Corporations Code section 17351.**[1]**  This statute provided that when a member seeks dissolution of the LLC the other members may avoid dissolution by "purchasing for cash the membership interests owned by the members so initiating the [dissolution] proceeding . . . at their fair market value."  (§ 17351, subd. (b)(1).)  If the members are unable to agree on the fair market value of the moving members' shares then the purchasing members may ask the court, or in this case the arbitrator, to appoint a panel of appraisers to determine the fair market value of the shares.  (§ 17351, subd. (b)(2), (3).)

In assessing the fair market value of the plaintiffs' shares in the LLCs the appraisers factored discounts for minority interest and nonmarketability into their calculations.  The arbitrator agreed that those discounts were proper and applied them in determining the fair market value of the plaintiffs' shares.

Plaintiffs contend that the arbitrator erred in applying discounts for minority interest and nonmarketability because the Operating Agreements specifically prohibit the use of those discounts in appraising the fair market value of membership interests.  They further argue that discounts for minority interest and nonmarketability are not appropriate when the shares are being sold to other shareholders in the company.  For those reasons, they argue, the trial court erred in not vacating or correcting the arbitration award on the ground that the arbitrator "exceeded [his] powers."  (Code Civ. Proc., §§ 1286.2, subd. (a)(4), 1286.6, subd. (b).)

## DISCUSSION

The Operating Agreements define a "Sale Trigger Event" in relevant part as an "event which, were it not for the provisions of this Agreement, would cause any Membership Interests, or any interest therein, to be transferred, for consideration or otherwise, to any person, whether voluntarily, involuntarily, or by operation of law under circumstances not constituting approved means of transfer under this Agreement.

---

**[1]**    See now Corporations Code section 17707.1, effective January 1, 2014.  All statutory references are to the Corporations Code except where otherwise stated.

3

Article 10.2 of the Agreements provides in relevant part: "Should any Member suffer a Sale Trigger Event, then the interest of the Member may be purchased by the Company and any other Member or Members pursuant to the procedure set forth in this Section[.]" Article 10.2, subdivision (b) provides the method for determining the fair market value of the interest "indirectly or directly owned by the Member suffering the Sale Trigger Event[.]" Subdivision (b) further states that the value of the member's interest shall "be appraised . . . without regard to any discount for minority interest in the Company or nonmarketability[.]"

Plaintiffs argue that their bringing an involuntary dissolution action under section 17351 is a Sales Trigger Event because it causes a member's interest to be "transferred . . . by operation of law . . . under circumstances not constituting approved means of transfer under this Agreement." They then reason that because the transfer of shares is a Sale Trigger Event the shares must be appraised under the provisions of Article 10.2, subdivision (b) which unequivocally states that in the case of a Sale Trigger Event the shares must be appraised "without regard to any discount for minority interest in the Company or nonmarketability."

Defendants respond that the appraisal rules in Article 10.2 do not apply because plaintiffs dismissed their claim for the sale of their interests under Article 10.2, choosing instead to proceed under section 17351. That statute expressly requires that the shares be appraised at "fair market value." (§ 17351, subd. (b)(1), (2)). The arbitrator reasonably found that "fair market value" includes discounts for lack of control and nonmarketability. (See Pratt, Valuing a Business: The Analysis and Appraisal of Closely Held Companies (2d ed. 1989) 43.)

Plaintiffs reply that section 17351 does not define "fair market value" and does not expressly require discounts for lack of control and nonmarketability. Because the Operating Agreements show that the parties intended that in sales of shares among members of the LLCs the shares be appraised without those discounts their intent should be honored in determining fair market value for purposes of section 17351. Secondly,

4

and of equal or greater weight, plaintiffs challenge the premise for applying discounts for lack of control and nonmarketability in determining the value of shares in a transaction between shareholders. In *Brown v. Allied Corrugated Box Co.* (1979) 91 Cal.App.3d 477, 486 the court observed: "As a practical matter, there is no question but that the lack of control inherent in plaintiffs' minority shares would substantially decrease their value if they were placed on the open market. . . . It has been noted, however, that the rule justifying devaluation of minority shares in closely held corporations for their lack of control has little validity when the shares are to be purchased by someone who is already in control of the corporation." Likewise, it can be argued that nonmarketability is not a valid consideration because the other members of the LLC are forced to buy the minority members' shares to avoid dissolution of the company. (§ 17351, subd. (b)(1).)

The question whether the arbitrator's appraisal of the plaintiffs' shares should have included discounts for minority interest and lack of marketability is a close one. We need not decide that question, however, because even if the arbitrator erred in applying discounts for minority interest and lack of marketability in assessing the fair market value of plaintiff's shares that error was one of law and is not judicially reviewable. (*Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 11.)

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


                                                    ROTHSCHILD, Acting P. J.

We concur:


        JOHNSON, J.


        MILLER, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.